IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
UNITED STATES OF AMERICA :
: CASE NO. 5:05 CR 00131-033
Plaintiff :
:
-vs- :
: <u>SENTENCING MEMORANDUM AND</u>
WILLIAM DAVIS III : <u>ORDER</u>
:
Defendant :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 12 October 2006, William Davis III ("Mr. Davis") appeared with his counsel, Roger Synenberg, for sentencing on the crime to which he pled guilty before Magistrate Judge Baughman on 22 May 2006 — Count One of a multi-count Indictment for conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. Mr. Synenberg was assisted by Dominic Coletta. Samuel Yannucci, Assistant United States Attorney, was present for the government. Also present were Travis Jennings, Pretrial Services Officer, and Kristine Lorentz, U. S. Probation Officer, who prepared the Pre-sentence Investigation Report

("PSR") and its revisions up to, and including the last revised report submitted on 14 August 2006.

By way of background, the Court relates that between 2003 and 2005, Mr. Davis participated with his partner and co-defendant, Andrew Fialko in this multi-state conspiracy as a regular courier of methamphetamine, ecstacy and drug proceeds between northeast Ohio and Columbus for Michael Higgins, the named defendant in this 55 defendant Indictment. The totality of the government's evidence, and the considered facts of the Plea Agreement, show that Mr. Davis' "personal and jointly undertaken and reasonably foreseeable relevant criminal conduct within the scope of the conspiracy involved the acquisition, transportation or distribution of at least 350 grams (35 grams actual) of methamphetamine."

On 22 May 2006, Mr. Davis pled guilty to Count One of the Indictment which charged that he and 54 co-defendants "did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree together and with each other, and with diverse others known and unknown to the grand jury: to possess with the intent to distribute and to distribute at least 350 (35 actual) but less than 500 grams (50 grams) of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), all in violation of 21 U.S.C. § 846."

At Mr. Davis' sentencing hearing, the Court applied the 2005 Guidelines to determine the defendant's base offense level of thirty. The Court found Mr. Davis entitled to a two-level reduction for specific offense characteristics pursuant to U.S.S.G. § 2D1.1(b)(6) as meeting the criteria set forth in (1)-(5) of U.S.S.G. § 5C1.2, and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) -

2

(b).  Pursuant to the Plea Agreement the government recommended, and the Court accepted, a three level reduction to credit Mr. Davis for his substantial assistance pursuant to USSG § 5K1.1.  The defendant's adjusted total offense level of 22, coupled with a criminal history category of I, yielded a sentencing range, pursuant to the 2005 Guidelines, of between 41 and 51 months.

Prior to his sentencing, Mr. Davis requested the Court depart from the adjusted total offense level of 22, proposed in the probation department's PSR, in consideration of the defendant's "severe mental disorders."  Mr. Davis specifically proposed application of a six-level departure pursuant to U.S.S.G. §§ 5K2.0(a)(4) & 5H1.3, which would yield an adjusted total offense level of 16 and a sentencing range of from 21 to 27 months.  (Docket No. 1026).

Section 5K2.0 of the Guidelines provides the Court with advisory grounds for departure not contemplated in other sections of Chapter Five.  Section 5K2.0(a)(4) advises the Court in the following manner:

> DEPARTURES BASED ON NOT ORDINARILY RELEVANT OFFENDER CHARACTERISTICS AND OTHER CIRCUMSTANCES. – An offender characteristic or other circumstance identified in Chapter Five, Part H (Offender Characteristics) or elsewhere in the guidelines as not ordinarily relevant in determining whether a departure is warranted may be relevant to this determination only if such offender characteristic or other circumstance is present to an exceptional degree.

In addition, USSG § 5H1.3, advises the following, with regard to mental and emotional conditions:

> Mental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted, except as provided in Chapter Five, Part K, Subpart 2 (Other Grounds for Departure).

3

Considered in tandem, the Guidelines advise that a defendant's mental and emotional conditions be "present to an exceptional degree" in order to warrant departure by the Court.

In addition, Section 5K2.0(e) of the Guidelines advise the Court to accompany an applied departure under this Section with "specific reasons for departure in open court at the time of sentencing" and specific reasons stated in a "written judgment and commitment order." See also, 18 U.S.C. § 3553(c); United States v. Fitzwater, 896 F. 2nd 1009, 1011 (6th Cir.1990).  In accord with Section 5K2.0(e), the Court established an extensive record in open court of the reasons for applying a departure to Mr. Davis' sentence pursuant to Section 5K2.0(a)(4). (Sentencing Hearing Transcript, pp. 141-148); United States v. Todd, 920 F.2d 399, 408 (6th Cir.1990) (requirement of a specific record met if court provides written statement or reasoned statement from the bench).  While the Court has provided reasoned statement from the bench during Mr. Davis' sentencing hearing, the Court, nevertheless, turns to memorializing the reasons for a departure under the Guidelines in a written judgment and commitment Order .

As evidence of the severity and chronic nature of his multiple psychological disorders, Mr. Davis submitted to the Court a diagnostic letter detailing his condition from Michele A. Bender, MSN, APRN, BC, a Psychiatric Advanced Practice Nurse at MetroHealth Medical Center where the defendant is a patient. (Docket No. 1026, Exh. A). Ms. Bender relates the defendant exhibits: Rapid Cycling Bipolar Disorder, Panic Disorder with Agoraphobia, Attention Deficit Disorder with Hyperactivity, Cannabis Abuse, Eating Disorder, Dependant Personality Disorder, Hypomania and Depression.

Id. at 1.  Mr. Davis was granted Social Security Insurance for his psychiatric disability in early 2005 as his mental condition renders him incapable of retaining employment.

These disorders appear both chronic and severe.  Mr. Davis, now 23 years of age, has been receiving treatment for his Bipolar Disorder since the age of 15, yet remains unstable as his disease has never been in remission, he is highly impulsive, and is always at risk of suicide.  Both Ms. Bender and Mr. Synenberg detail Mr. Davis' five serious suicide attempts, beginning at age 16 when he attempted to jump from a bridge due to his inability to cope with his homosexuality.  The defendant's most recent suicide attempt occurred in May 2006 when he purposefully overdosed on his medication, Seroquel, and required cardio intervention to resuscitate.

Mr. Davis is a very fragile and unstable individual who remains a high suicide risk despite the cocktail of prescription medications he takes on a daily basis to maintain a semblance of social functioning.  Currently, Mr. Davis is prescribed the following medications: Seroquel (250 mg), Conazepam (1 mg), Zoloft (100 mg), Depakote ER (500 mg), Diclofenac SOD EC (50 mg), and Tramadol (100 mg).  According to Ms. Bender, the defendant has never been a danger to others.  Mr. Davis is clearly, however, a danger to himself.

Courts may examine a wide variety of circumstances in determining whether a downward departure is warranted under § 5H1. See United States. v. Martinez-Guerrero, 987 F.2d 618, 620 (9th Cir.1993); United States v. Lara, 905 F.2d 599, 603-04, (2d Cir.1990) (considering defendant's immature appearance, sexual orientation, emotional fragility, and general vulnerability as § 5H1 factors).  In specifically considering departure applications under §5H1.3 for mental and emotional

5

conditions, this Circuit has regarded "suicidal tendencies" an inadequate reason upon which to base a Section 5k2.0 departure. United States v. Harpst, 949 F.2d 860, 863-64 (6th Cir. 1991). In Harpst, the defendant merely avowed self-destructive tendencies which had abated by the time of his sentencing according to his attending physician. The Court in Harpst was concerned with the difficulty of separating the "wheat of valid claims from the chaff of disingenuous ones," thereby opening the door for the future submission of "boilerplate" arguments of "suicidal tendency" by defendants at sentencing hearings Id. At 863. See also, United States v. Johnson, 979 F.2d 396, 400-01 (6th Cir. 1992).

While the Court remains sensitive to the possibility of such overreaching, the instant matter bears on none of the difficulties so apparent in Harpst. Mr. Davis' conditions are pervasive, chronic, severe and well documented. As such, this case is sufficiently unusual to warrant departure, the circumstance of mental disorder is actually present and a four level, downward departure, is reasonable under the circumstances presented by this defendant and in light of the sentences handed down to Mr. Davis' co-defendants. Harpst, 949 F.2d at 862; see also U.S. v. Garza-Juarez, 992 F.2d 896 certiorari denied 114 S.Ct. 724 (9th Cir. 1993) (Downward departure based upon defendant's mental condition, panic disorder with agoraphobia, was proper under Sentencing Guidelines; district court's findings as to severity of defendant's disorder were not clearly erroneous).

Pursuant to Booker, after the Court consults the advisory Guidelines, the Court must also consider the factors listed in 18 U.S.C. § 3553(a), as a means for informing the Court's discretion in fashioning an appropriate sentence under the facts and

6

circumstances of each case.  Section 3553(a) requires a sentencing court to impose a sentence sufficient, but not greater than necessary, to accomplish the following:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3552(a)(2).

In crafting a sentence designed to accomplish those goals, in this specific instance, the Court has considered the nature and circumstances of Mr. Davis' offense, his history and characteristics, the kinds of sentences and the sentencing range established under the Guidelines, and the need to avoid unwarranted sentencing disparities among the co-defendants in this indictment.  18 U.S.C. § 3553(a)(1), (4), (6). The Court is quite familiar with the violations, histories, and characteristics of each of the 55 indicted co-conspirators in this matter who have come before this bench for sentencing.  The Court recognizes the role played by Mr. Davis in this endeavor as a courier between the city of Columbus and points north in Ohio.  In addition, the government relates Mr. Davis' early cooperation in this case, as one of the first individuals to meet with law enforcement and provide information.  (Hearing Trans. p. 128).  To date, sentences in this conspiracy have ranged from 151 months to 8.5 months of incarceration.  This Court takes specific note that Ms. Adrienne Archacki was

sentenced to 24 months on 27 June 2006 for her participation in the conspiracy as a supplier of methamphetamine.

The Court balances the equities of Mr. Davis' role in facilitating the exchange and commerce of the drugs in question, the length of time over which Mr. Davis remained involved in the endeavor, the nature of the defendant's cooperation with the government, and the significance of Mr. Davis' pervasive mental disorders.  As a result of this thorough consideration, the Court arrives at a term of imprisonment for Mr. Davis of 27 months incarceration to be followed by 3 years of supervised release.

Accordingly, pursuant to the threshold considerations of Section 3553(a), the Court finds a sentence of 27 months incarceration and 3 years supervision sufficient, but not greater than necessary to reflect the seriousness of Mr. Davis' offense.  The sentence will meet the objectives of just punishment and improve Mr. Davis' conduct and condition.  In addition, in propounding the 27 month term as consonant with the conditions of this case in consideration of the sentences afforded Mr. Davis' co-defendants by this Court, the Court considers the serious nature and circumstances of the offense and the history of this defendant.  Finally, a 27 month period of incarceration will afford adequate deterrence to Mr. Davis' conduct and, thereby, protect the public.

Accordingly, after considerable reflection, and pursuant to the evidence submitted to the Court, the extended colloquy with parties' counsel at sentencing, and the Section 3553 factors, the Court will apply Section 5K2.0(a)(4) of the Guidelines. This case represents the first time this Court has applied Section 5K2.0(a)(4), and in so doing the Court finds the defendant's psychological profile presents a pervasive mental illness to an exceptional degree, this Court .

8

Mr. Davis' illness warrants a downward departure of four levels to yield an adjusted offense level of 18 with a sentencing range of from 27 to 33 months.  The Court sentences Mr. Davis to the Bureau of Prisons for 27 months, to be followed by a three-year term of supervised release.  In addition, the Court strongly recommends that the defendant serve his sentence in a Federal Medical Facility in order to receive treatment necessary to address his exceptional mental condition.

     IT IS SO ORDERED

                          /s/Lesley Wells
                         UNITED STATES DISTRICT JUDGE

Dated: <u>19 October 2006</u>